Our next counsel for argument is 21-1104, Guarantant Health v. Vidal. Mr. Rosato. Thank you. May it please the court, the board here found certain claims of the HHP patent obvious over the Schmidt reference, but it did so by erroneously construing the claim terms, ignoring its own fact findings, which were inconsistent with its own conclusions, and by also declining to meaningfully consider several pieces of key evidence of non-obviousness. And with the court's permission, I'll turn to the issue of claim construction with the term non-uniquely tagged. So here for this claim term, the board had initially identified in its institution decision an express definition for this term. The final written decisions were declined to apply that express definition and opted for an alternative broader construction. The first issue of the board's decision here is for their alternate construction, the decision really provides no justification as to why this adopted construction is consistent with the intrinsic evidence. There are no fact findings supporting that construction. In fact, the board makes a number of fact findings that are inconsistent with its adopted construction. And there are several. The first is the board makes a finding of fact that the specification discusses unique tagging and describes that in a way where it encompasses tagging molecules such that all or nearly all are uniquely tagged. Then the board adopts a construction that encompasses precisely what the specification is discussing as unique tagging. Okay, I do think there's a bit of inconsistent language in the board's decision, but I understand what you're saying is that Schmidt doesn't satisfy the non-uniquely tagged limitation because the barcodes together with the endogenous DNA results in unique tagging, right? Correct, yeah. And the question is whether, in determining whether something is uniquely tagged, you can consider the endogenous DNA and the board is saying no, that's not part of the identifier within the median of the claims. Do I get that right? Mostly. I would just clarify a few points on that. I would agree that Schmidt unquestionably requires unique identifiers in order to distinguish one molecule from the other. That's the only way in which Schmidt distinguishes molecules. The board's construction of non-uniquely tagged does require that the number of identifiers be less than the number of polynucleotides. The board also finds, and this is another instance where the board's fact findings are inconsistent with their conclusions, the board makes multiple findings of fact as stated plainly in Schmidt that in this hybrid embodiment they're relying on of Schmidt that it's the combination, as you mentioned, Your Honor, of endogenous shear sequence plus exogenous NMR that together you form this amalgamation. It does not have unique barcodes, right? Schmidt only has unique barcodes. Well, it depends what you mean by a barcode, but the only reason that Schmidt has a unique identifier for all fragments is because it relies on the added identifiers, put at the, tacked onto the fragments together with the endogenous DNA of the fragments themselves, right? In the one embodiment the board's relying on this hybrid embodiment, that is correct, Schmidt's identifier, and you're correct, I should use the term identifier because that's the term in the claims and it's the term used by Schmidt and the board's construction, but Schmidt's identifiers are unquestionably unique for every molecule in the hybrid embodiment. Not if you put aside the endogenous DNA, right? But then it wouldn't be an identifier, it doesn't identify anything. That's the question, what's an identifier? And if I understand what the board is saying, that the identifier does not include the endogenous DNA, but just the sequences that are tagged onto the end of the fragments, right? What the board says, actually there are two key fact findings the board makes on Schmidt. Is my statement correct? I don't think that's, I think that the board did is they, in some fact findings, correctly identified what is the identifier in Schmidt, and then in drawing their conclusions, they ignored that identifier and looked to a portion, the NMR portion. If the unique identifier were the sequences that were tacked on to the end of the fragments, then Schmidt does disclose non-unique identifiers, right? That's incorrect, your honor. Schmidt, that is not correct. Schmidt has, relevant to this field, two embodiments. Well, in every single embodiment of Schmidt, the identifier is unique. Schmidt tells us that most- It's only because of the endogenous DNA, right? No, it's because of the diversity and the length and the characteristics of the identifier. The identifier is a sequence of DNA that's used to uniquely distinguish one molecule from the other. In some cases, Schmidt's identifier is in a long endogenous sequence. They give an alternative, this hybrid, where the identifier is a combination of endogenous sequence plus. In every single case, the identifier is a long sequence and long nucleotide sequence, where that sequence is used to identify. What I ask is to put aside the endogenous DNA in Schmidt, which, in your view, creates unique identifiers. Let's say that's not part of the identifier, that the only identifier is the sequence that's tacked on to the end of the fragments. Then Schmidt does disclose the use of non-unique identifiers, right? It doesn't. No? No, every single piece of. How could that be? I just don't understand why that's your position. Because it's, well, it's the position because that's what Schmidt tells us, right? They're using any sufficient amount, length of nucleic acid sequence in order to uniquely identify every fragment. Schmidt says that. You're not accepting my hypothetical. My hypothetical is, put aside the endogenous DNA. Don't consider that as an identifier, as part of an identifier. Then Schmidt, because it doesn't have a tacked on sequence that's unique to each fragment, has non-unique identifiers, right? If you're just considering the endogenous,  No, if you're not considering the endogenous and just the added tag at the end of the fragment, then it does show non-unique identifiers. It would be a non-unique piece. I disagree it would be an identifier. That's the question of what you mean by identifier. Exactly, right. If you include the endogenous DNA, then Schmidt does not disclose non-unique identifiers. If you put aside the endogenous DNA, it does. It's that simple, right? Under your hypothetical, Your Honor, if the whole identifier is a long sequence and then we ignore three quarters of it and circle an arbitrary piece and say, is that possibly non-unique? Under that hypothetical, that could be a non-unique piece. It's not an identifier. It'd be like trying to telephone somebody with an area code and having nothing of the rest of the phone number. Could I ask you to turn to your objective in Disha argument? Of course, Your Honor. So there, here the board erred in failing to consider evidence that went to both reasonable expectation of success as well as evidence that was submitted regarding objective and issue of non-obviousness. And I'll address those in turn. But for the issue of motivation with reasonable expectation, Gordon had submitted, among other evidence, five different peer-reviewed publications discussing challenges with cell-free DNA generally and criticizing Schmidt specifically when it came to cell-free DNA. One of those references, I don't have time to go through every one of them, but one example is the Parakis reference, which is discussed by both Gordon's expert and in the briefing at pages A626, 627, cited and block quoted. But Parakis is discussing on, and I'll give appendix sites for Parakis, 3293 in the appendix, is Parakis is discussing limitations and difficulties with conventional technologies, including sequencing platforms, library preparation protocols, as applied to cell-free DNA. On the very next page, 3294, Parakis is discussing the Schmidt method specifically and describes, goes on to provide a discussion that Schmidt had never been applied to cell-free DNA, it had recognized limitations that would preclude its application to cell-free DNA, and that skilled artisans didn't expect it to work in cell-free. I asked you to move on to your objective consideration evidence, and none of that is there. I apologize, Your Honor, I think. So, you have such a limited, you have less than two minutes left before you're under your rebuttal time. Sure. So, move to the argument I actually asked you. I thought you said evidence. I said your objective indictment evidence. Objective evidence. So, if I can finish that thought, that wasn't considered. With the objective indicia, there's still the issue of objective indicia, evidence was submitted, as to the- You said you didn't cite your expert, and you did, that's the argument, right? We did, yes. And the board's basis for disregarding it was we didn't cite our expert. Okay, so that kind of sums it up. Probably doesn't need more argument than that, but I do have a question for you. How in the world did you find an expert named Quackendish? I mean, I read that and I thought, is this a joke? This is, really? Like, if this case goes to a jury, that's all they're gonna think about. He's a compelling expert, your honor. Okay, well, yes, all right. Anything else? Was it Quackendish's declaration, or wasn't there a different name? It was Dr. John Quackendish, from Dean of Harvard Institute at Harvard. I thought when I was reading the declaration that you're urging us to say that it was ignored, there was a different name on it, but I guess I'm wrong. No, it was Dr. Quackendish, and that is his testimony is both cited and discussed at the page the board identified. So, if that is even. Okay, do you wanna save the rest of your time for rebuttal? I do, and thank you. Yep, Ms. Craven. May it please the court. So, on that last point, you got a bit of a problem. Sure, of course, your honors. The board didn't consider the expert's testimony for the secondary considerations, that's true, because it didn't see the citation to the expert testimony for the nexus. And if we can, we go to the patent owner's response. A page of the appendix. It's for secondary considerations. It starts at JA 640. Which volume, do you know? Line two. Line two. And so that's, so the last paragraph where it starts here is where they discuss the nexus. And that paragraph talks about the legal standard. It's well settled that there's a presumption of nexus for objective considerations when the patentee shows that the asserted objective evidence is tied to a specific product. That goes on to the next page. They have a citation to this court's case law, and then a C also. And that is their expert, the citation to their expert testimony. It's a block citation to all the paragraphs of Dr. Feigenbusch's evidence on secondary considerations. Is the C also, it's a bit 2025, paragraphs 156 to 166? Yes. So that's Dr. Feigenbusch. That's not all of his testimony, right? It's 10 paragraphs of a very, very long expert report. So they do seem to hone right in on specific paragraphs. That's fair. It is the block quotation to not only nexus, but also long felt need and commercial success. Okay, but the problem is that it's not just that site. It's later on that page, 641. This is Dr. Quackenbusch explains the garden 360 test embodies at least claim one of the 822 patents. Right, and there's no citation there. And the rest of the citations in that paragraph are to research articles, not to Dr. Quackenbusch's testimony. But above, in multiple places, they have cited his testimony, but here they cite his testimony, and then they refer to his testimony explicitly, though without citation. Are you suggesting to me that that's not enough to make them just look at it and address it? I mean, there is just the one citation. The rest are to references. But if your honors think that the board. Just the one citation and the sentence that uses his name. That is true. There's a sentence, there is no citation there. But if the board abused its discretion in not considering the testimony, then it would be a remand for the board to consider whether there was a nexus and the long felt need and commercial success in the first instance. But I asked you a question about the remand. So, what happens on the remand? Where has the petitioner gone? Is the petitioner still involved at the PTO, or has the petitioner walked all together? Well, the parties, it's my understanding the parties settled after appeal to this court. So, the petitioner hasn't disappeared from the. We don't know the details of the settlement. The settlement may have been the petitioner takes a walk entirely forever. That is true, yes. So, the PTO can proceed, can't they? Yes, the board can proceed without a petitioner to consider this evidence and issue a final written decision that can be. Who makes the arguments on behalf of the petitioner? Well, the petitioner has already made the arguments in their reply to the patent owner's response. So, there are arguments before the board that address nexus, that address. What happens if there are further questions? Then. If they get past nexus, right? Then the secondary considerations are up for grabs. That's right, and the petitioner makes arguments against long felt need and commercial success in their reply brief. So, there are arguments for the board to consider. How much has the practice been in the past? I think the practice has been in the past. Whether there's been a remand where, for example, the petitioner has taken a walk. I'm aware of cases where the parties ask for it to be dismissed and the board dismisses the case. I am aware of cases where the board then goes on and issues another final written decision. Those are the options to the board and they could ask, right now, my understanding is not that there needs to be new briefing because it's just that the board failed to consider evidence that was before it. So, really, the only thing the board would need to do is consider that evidence, consider all the secondary considerations, and then write a final written decision that determines obviousness in light of the secondary considerations. The record would be closed in terms of further submissions on the issue. I believe so, because... Unless the board asks, right? Unless the board asks, but my understanding is the complaint is that they didn't consider this evidence, not that there needs to be new evidence submitted for the secondary considerations. So, then, we can... The next issue we can discuss is Schmidt. Yeah, you did well with a really tough... Thanks, sorry? You did really well with a tough set of facts there. Thank you, your honor. Go ahead. So, then turning to Schmidt and whether Schmidt teaches non-unique tagging, what the board found, there's two real meanings of identifiers. And in the board's construction of unique identifiers, different identifiers for non-unique tagging, it emphasizes over and over again that that means the tag count, which is those extrinsic pieces of DNA that are ligated to the endogenous CF DNA molecules. And you can find this at JA-25 in the board's final claim construction. And also, in its discussion of Schmidt on JA-36, where it talks about Schmidt's hybrid method because of the number of unique identifiers, i.e., the tag count of 65,536. The board is clear that when the identifier is the unique identifier for the non-unique tagging of the polynucleotides, it's referring to the tags, the barcodes, there's a number of different terms for it. But are those extrinsic pieces of DNA that are... Those would have to be because the whole purpose of the patent is to save money by cutting down on the number of tags that you're adding, right? That's right. They wanna use fewer tags so that you can then not... You can't uniquely identify all the polynucleotides in the sample unless you use the start and stop regions of the endogenous DNA. So then you can group the polynucleotides into families for the amplified polynucleotides and determine then a mutation that is consistent in all those polynucleotides as opposed to a sequencing error or an amplification error. And this is exactly what the 822 patent teaches in what we've called the tag plus embodiment, where you use the non-unique tags, but then you use the start and stop regions of the endogenous DNA to provide a unique molecular identifier. And that's the word Schmidt uses, not then a unique tag identifier, but the unique molecular identifier that would identify that molecule as the parent of all these amplified polynucleotides. So there's terms that are then being used for different concepts and the board found that Schmidt's tags non-uniquely tag the polynucleotides in the sample in the hybrid method and that that meets the limitations of the claim. We could move, if there's any questions about claim construction or the reasonable expectation of success, I'm happy to answer any questions. Otherwise, ask this court to affirm the board's decision. All right, thank you. Thank you, Your Honor. Okay, to start, I have to just channel Judge Luria for a second. Ms. Craven will appreciate this. Your expert didn't duck the issue, did he? No. Sorry. I hope my expert doesn't listen to this earring transfer. No, he did not. With that, just a few brief points, if I may. On the objective indicia issue, the court may already recognize this, but at 641, the discussion that begins, Dr. Quackenbush explains, is pointing to the very same pieces of evidence that are listed in, that Dr. Quackenbush lists in his claim chart. So this discussion actually maps with exactly what he is going through and explaining maps up in his claim chart. So there's consistency there. And you agree the right course of action is to vacate and remand? Well, certainly to vacate. There was a question on what happens on remand, and when there is no party left, the party that, the patent owner that goes back is certainly gonna ask for additional briefing because they'll have more to say. I'm not aware of a single case in which the board has continued on remand when parties have settled out, and there's nobody to oppose what patent owner's asking for. So I would expect a termination of the proceeding. With re. Just to clear the confusion I had about the name, so one of those that I meant was the claim chart done by Quackenbush? It was, Your Honor. That's at paragraph 159, if you want an A-site, I can provide it. That's A4491. If I can turn to the issue of identifiers and non-unique tagging, I would point out just there's important language of the claim. The claim in claim one is defining tagged parent polynucleotides as having two parts part one is the sequence from the DNA molecule, part two is the identifier comprising one or more barcodes. So this is important language that stems from the claim, and it just doesn't line up with what we see in Schmidt. So I maintain the argument that Schmidt doesn't satisfy the claim construction, whether it's the express construction that's adopted or whether it's the board's construction. And with that, I have no further comment, lists, or questions. I thank both counsel for this argument. The case is taken under submission. Thank you.